UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bradley R. Hartke, Douglas P. Hartke, Joan Hartke, individually and as Trustees of the Joan L. Hartke QTIP Marital Trust dated 7/12/1996 and as Trustees of the Robert Eugene Hartke Family Trust dated 7/12/1996; the Joan L. Hartke QTIP Marital Trust dated 7/12/1996; and the Robert Eugene Hartke Family Trust dated 7/12/1996, <br><br> Plaintiffs, <br> v. <br><br> WIPT, Inc., Roger Dean Waldner, The One Stop, Inc., RDW-KILT, Inc., and Community Bank, <br><br> Defendants. | Civ. No. 17-1851 (PAM/BRT) <br><br><br><br><br><br><br><br><br><br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on the parties' Motions for Judgment on the Pleadings. For the following reasons, Plaintiffs' Motion for Judgment on the Pleadings is granted, Defendant Community Bank's Motion for Judgment on the Pleadings is granted, and the remaining Defendants' various Motions are denied.[1]

**BACKGROUND**

The personal and corporate relationships underlying this case are complex and opaque. For purposes of the dispositive Motions, however, a complete understanding of the parties' interactions is not necessary. The Court will thus briefly describe the events

---

[1] Plaintiffs moved for judgment on the pleadings or, in the alternative, for summary judgment. Defendants Waldner, WIPT, The One Stop, and RDW-KILT responded by moving for a continuance under Fed. R. Civ. P. 56(d). Because the Court concludes that judgment on the pleadings is appropriate, the Motions for Continuance are denied.

giving rise to the litigation.

In July 2002, Plaintiffs Bradley Hartke, Douglas Hartke, Joan Hartke, and the two Hartke family trusts entered into a $900,000 note for the purchase of a trucking business, Solace Transfer, from Defendant The One Stop, Inc.  (Larson Aff. (Docket No. 68) Ex. 2.)[2]  Defendant Community Bank, then known as State Bank of Winslow-Warren, is an Illinois bank that provided the financing to the Hartkes for the purchase of Solace. (Compl. ¶¶ 17, 19-20.)  Plaintiffs allege that Defendant Roger Waldner, appearing in this matter pro se, was the owner of The One Stop, which in turn owned Solace.  (Id. ¶ 12.) The note was secured in part with a mortgage on farmland and other property the Hartkes owned in southwest Minnesota.  (Larson Aff. Ex. 3.)

Waldner had filed for bankruptcy protection for Solace's predecessor company, H&W Motor Express Company, one month before the Hartkes' purchase.  (Compl. ¶ 16.) Waldner had purchased H&W and transferred all of its assets to Solace, but Solace was in debt for more than $2 million, all secured with Community Bank-issued mortgages either personally guaranteed by Waldner or secured with various property Waldner and his associates owned.  (Id. ¶¶14, 17, 20.)  The Hartkes contend that the $900,000 purchase price for Solace represented the difference between Solace's indebtedness and the money Waldner had siphoned out of H&W.

The terms of the note required "11 monthly payments of $7,800 beginning 8-24-2002 and 1 balloon payment of $887,894.68 on 7-24-2003."  (See Larson Aff. Ex. 2 at 1.)

---

[2] The notes and mortgages attached to the Larson Affidavit are matters necessarily embraced by the pleadings and thus may be considered on a motion for judgment on the pleadings.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

2

The Hartkes made two monthly payments on the note, but they allege that Solace was in serious financial trouble even before they agreed to purchase it and that it was never a viable business. They thus made their last payment in October 2002. (Compl. ¶ 21.) Over the next several years, Waldner-controlled entities such as The One Stop and Defendant WIPT (which stands for Women's Investment Property Trust) also made payments on the note, but after October 2002, the note was not ever current.

In November 2002, the Hartkes signed another note, in the amount of $500,000, in favor of The One Stop. (Larson Aff. Ex. 4.) The note was secured with a mortgage on Plaintiff Joan L. Hartke Marital Trust's property. (Id. Exs. 4, 5.) According to this note, the proceeds were to be used for "business investment," and were to be distributed in multiple advances; the note leaves blank the amount of any immediate advance. (Id. Ex. 4 at 1.) The Hartkes assert that they did not receive any money from this note. (Compl. ¶ 48.) They also contend that Waldner used the Hartkes' personal residences as collateral for this note without their consent. (Id. ¶ 47.) Waldner insists that the Hartkes knew about the mortgaging of their residences. The November note was eventually assigned to Defendant RDW-KILT, another Waldner-controlled company. (Id. ¶ 49.)

The IRS began investigating Waldner in 2005, and in 2006 he was charged in federal court in Iowa with multiple counts of making false statements in H&W's bankruptcy proceedings. He pled guilty to two counts in May 2007, and received a 120-month sentence. United States v. Waldner, 564 F. Supp. 2d 911 (N.D. Iowa 2008). Waldner was released from prison in late March 2017.

In 2007, after Waldner pled guilty but before he was sentenced, RDW-KILT

attempted to accelerate the November note and mortgage. (Compl. ¶ 51.) The Hartkes allege that they discovered at that time that their homesteads were collateral for the mortgage, and they disputed the acceleration because neither of their spouses had signed the mortgage. (Id. ¶ 52.) A Minnesota state court ordered that the mortgages on the homesteads were invalid, and there was apparently no further action on the November note and mortgage. (Id.)

In late December 2016, WIPT notified the Hartkes that it had acquired the July note and mortgage from Community Bank, and demanded payment from the Hartkes for $1.5 million that WIPT had ostensibly paid on the note. (Id. ¶ 53.) The Hartkes then brought this lawsuit, seeking declarations that the July and November notes and mortgages are unenforceable and that WIPT and the other Defendants[3] are barred by the statute of limitations from attempting to collect on them.

**DISCUSSION**

The only real issue here is whether the relevant statutes of limitations bar Defendants from taking any action to enforce the notes. The notes went into default, at the latest, in late 2002. There was no attempt to enforce the July note until the end of 2016. The Complaint contains no allegation regarding demands for payment on the November note.

The July 2002 note provides that Illinois law governs the note and mortgage.

---

[3] There is no dispute that Community Bank no longer has any interest in the note and mortgage it issued to Plaintiffs. Plaintiffs ask for certain factual findings before any dismissal of Community Bank from this action, but those findings are not appropriate. There is no case or controversy as to Community Bank, and its Motion will be granted.

4

(Larson Aff. Ex. 2 at 2; Ex. 3 ¶ 24.)  The Illinois statute of limitations on promissory notes is ten years "after the cause of action accrued." 735 Ill. Comp. Stat. 5/13-206. The November 2002 mortgage provides that it is "governed by the laws of the jurisdiction in which Lender is located." (Larson Aff. Ex. 5 ¶ 24.) The One Stop was the lender on the November note; it is an Iowa corporation with an address in Dubuque. The Iowa statute of limitations is also ten years. Iowa Code § 614.1(5).

Because Defendants did not make any demand for payment on the July 2002 note until December 29, 2016, the statute of limitations bars them from seeking to enforce the loan. Any demand on the November 2002 note would also be time-barred.[4]

Defendants argue that an Illinois statute that preserves counterclaims against statutes of limitations applies here to render the notes enforceable. See 735 Ill. Comp. Stat. 5/13-207. This statute saves counterclaims when the plaintiff's initial cause of action accrued before the counterclaim's limitations period expired. See, e.g., Barragan v. Casco Design Corp., 837 N.E.2d 16, 23-24 (Ill. 2005) (noting that § 13-207 applies when a plaintiff "owns" the claim being countered before the counterclaim is time-barred). Thus, for example, if the statute of limitations for breach of contract is 10 years but for a counterclaim asserting unjust enrichment is only five years, a party cannot

---

[4] Although a lack of payment demand might mean that a request for a declaratory judgment with regard to a future demand is not ripe, in the circumstances present here, and especially given the representations in Defendants' pleadings, it is likely that a demand for payment on the November loan is sufficiently imminent to create a case or controversy with respect to that loan. See Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 795 (8th Cir. 2016) (noting that a declaratory judgment plaintiff need only show "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (quoting Golden v. Zwickler, 394 U.S. 103, 108 (1969)).

5

prevent its opponent from bringing an unjust-enrichment counterclaim by waiting until the sixth year after the alleged breach to assert a claim for breach of contract.

Here, by contrast, Plaintiffs could not have brought a declaratory judgment claim before December 29, 2016, the date Defendants made a demand under the July 2002 note. By that date, however, any counterclaim Defendants might have was untimely. Thus, Plaintiffs did not "own" their declaratory-judgment claims before the limitations period on Defendants' counterclaims expired, and the Illinois counterclaim-saving statute does not save Defendants' counterclaims.

Finally, Defendants' claim that judgment is premature because they need time to conduct discovery is without merit. The issues here are purely legal: whether the statute of limitations bars Defendants from seeking payment on these notes. The discovery Defendants claim to require is discovery into whether Plaintiffs in fact received money under either of the notes, and more information about the "conspiracy" that Waldner alleges regarding the Hartkes and Galley Smith. But none of those facts has any bearing on the legal issue here, and the resolution of that issue is clear. Defendants are time-barred from seeking payment on these loans, and Plaintiffs are entitled to a declaratory judgment to that effect.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant Waldner's Motion for Judgment on the Pleadings (Docket No. 33) is **DENIED**;

2. Defendants The One Stop, RDW-KILT, and WIPT's Motion for Judgment on the Pleadings (Docket No. 36) is **DENIED**;

3. Plaintiffs' Motion for Judgment on the Pleadings (Docket Nos. 47, 49) is **GRANTED**;

4. Defendant Community Bank's Motion for Judgment on the Pleadings (Docket No. 72) is **GRANTED**;

5. Defendant Waldner's Motion for Continuance (Docket No. 81) is **DENIED**;

6. Defendants The One Stop, RDW-KILT, and WIPT's Motion for Continuance (Docket No. 90) is **DENIED**;

7. Plaintiffs' Motions to Strike (Docket Nos. 98, 107) are **DENIED**; and

8. The relevant statutes of limitations preclude enforcement of the notes and mortgages at issue in this litigation.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 28, 2017

                                           *s/Paul A. Magnuson*
                                           Paul A. Magnuson
                                           United States District Court Judge